IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL MARCANTONIO,<br><br>    Plaintiff,<br><br>    v.<br><br>BERGEY'S INC. and VOLVO TRUCKS NORTH AMERICA, INC.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-6264(JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Matthew Benjamin Weisberg, Esq.
WEISBERG LAW
7 South Morton Avenue
Morton, PA 19070
    Attorney for Plaintiff

Kevin M. McKeon, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    Attorney for Defendants Bergey's Inc. and Volvo Trucks of
    North America, Inc.

**SIMANDLE, Chief Judge:**

I.    **INTRODUCTION**

    This case comes before the Court upon Defendants' motion for summary judgment. In this case, Plaintiff Michael Marcantonio alleges that Defendants Bergey's Inc. and Volvo Trucks of North America have failed to honor an extended warranty he purchased to protect his truck's engine. For the

reasons that follow, the Court will grant Defendants' motion because, upon the material facts of this case, as to which there is no genuine dispute, Plaintiff cannot prevail as a matter of law because no warranty covered the truck engine repairs in dispute herein.

II. **BACKGROUND**[1]

This case concerns a Volvo truck owned by Plaintiff Michael Marcantonio and the "Go Program" extended engine warranties offered by Volvo. Plaintiff Michael Marcantonio purchased a used Volvo truck in or about September 2008. (See Exhibit B to Certification of Kevin McKeon ("McKeon Cert.") [Docket Item 27-2], Plaintiff's Response to Defendant Volvo's Interrogatories at No. 9-11.)

Plaintiff's truck suffered engine trouble in the winter or spring of 2013. (See Ex. D to McKeon Cert., Invoice from Bergey's dated May 8, 2013.) Plaintiff first took his truck to Truck Enterprises Lynchburg, Inc. ("Lynchburg"). Lynchburg apparently provided Plaintiff with two repair estimates: the first, dated January 29, 2013, was $11,501.79 for "OVERHAUL

---

[1] The Court distills this undisputed version of facts from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence, contain improper legal argument or conclusions, or recite irrelevant factual matter. See generally L. Civ. R. 56.1.

2

ENGINE WITH GO PLUS PACK," and the second, dated February 28, 2013, was $19,370.75 for "GO PLUS REBUILD" and "NON GO PLUS REPAIRS." (See Exhibit B to Plaintiff's Statement of Facts in Opposition to Summary Judgment ("Pl. SMF") [Docket Item 30], January 29 Estimate and Exhibit A to Defendants' Reply Brief in Support of Motion for Summary Judgment [Docket Item 33], February 28 Estimate.)

The "Go Plus" referenced in the Lynchburg estimates is apparently one of four levels of an extended warranty offered by Volvo to "restore your engine's power, reliability and operating efficiency." (Exhibit C to Pl. SMF, Volvo Guaranteed Overhaul.) According to an advertisement for the Go Programs, the price of a Go Program warranty includes various new engine parts and a two-year, unlimited mile nationwide warranty on the parts in those "overhaul kits" and labor to repair them. (Id.) A Go warranty at the "Go Plus" level costs $12,981 for the engine parts and installation, according to the advertisement. (Id.) "Extended Coverage" costs more. (Id.) In order to be eligible for a Go Program warranty, an engine must first be inspected and certified. (Ex. E to McKeon Cert., Deposition of Stephen Forde ("Forde Dep.") at 41:21-42:10; see also Ex. G to McKeon Cert., Volvo Guaranteed Overhaul Warranty VE D12 Engine.) It is unclear where Plaintiff obtained this flier for the Go Program and

whether he received the same information about an extended warranty from these Defendants.

Plaintiff decided not to have his engine repaired by Lynchburg because "they messed around with their estimate, and I didn't feel comfortable with them" and instead had his truck towed to Bergey's, Inc. ("Bergey's") for repairs. (Exhibit D to Pl. SMF, Deposition of Michael Marcantonio ("Marcantonio Dep.") at 61:15-21.) Plaintiff's contact at Bergey's was Stephen Forde. (Id. at 66:20.)

Plaintiff and Mr. Forde agreed that Bergey's would repair the engine for $11,500, and it is undisputed that, at the very least, he holds a "parts warranty on the parts replaced" during that repair. (Id. at 71:2-5; Forde Dep. at 9:13-18.) However, the parties disagree as to whether that repair also included a Go Program warranty. Plaintiff maintains that he told Mr. Forde that "I wanted the Go Program done" and that he "was under the understanding I was getting the Go Program warranty" included in that $11,500 price for the "engine rebuild" because (i) his invoice from Bergey's included a "Volvo V12 engine overhaul" and (ii) Bergey's $11,500 price was close to the Volvo advertisement for the Go Plus Warranty ($12,981) and Lynchburg's quote for "OVERHAUL ENGINE WITH GO PLUS PACK" ($11,501.79). (Marcantonio Dep. at 66:25, 71:17-19, 72:19-24, 117:11-19; see also Ex. B to McKeon Cert. at No. 19; McKeon Cert. Ex. D at 3; compare McKeon

4

Cert. Ex. D with Pl. SMF Ex. B and Pl. SMF Ex. C.) Defendants, on the other hand, maintain that Bergey's only repaired the damage to Plaintiff's truck engine in 2013, and that they neither sold him a Go Program extended warranty nor performed the "engine overhaul" that is part of the program; Mr. Forde testified that the engine did not have all of the repairs necessary to make it eligible for certification in the warranty program in the first place. (Forde Dep. at 17:5-15, 42:16-22.) Moreover, Plaintiff's invoice from Bergey's details the labor performed and parts does not mention any reference to a "Go basic warranty" or other Go Program warranty, and includes the following disclaimer, in a separate box and featured in a different font from the rest of the page:

> The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The seller hereby disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any person to assume for it any liability in connection with the sale of this item/items.

(See McKeon Cert. Ex. D & F.)

Plaintiff returned to Bergey's with his truck in August of 2013 to repair an oil leak, and again in February 2014 for body parts. (Marcantonio Dep. at 83:21-84:13, 86:19-87:14.) Although he apparently complained to Bergey's about the engine's performance, he drove the truck continuously until May 2014.

5

(Id. at 88:16-90:17.) At that point, his truck had "no power" and was making noise, so Plaintiff took the truck to Conway. (Id. at 94:7-96:3.) Conway diagnosed the truck with low fuel pressure and replaced the fuel pump. (Id.) The motor on the truck "blew up" a few weeks later near Conway in Syracuse, New York, in the middle of delivering a load between Rochester, Buffalo, and New Jersey. (Id. at 97:4-11.) Plaintiff took his truck to Conway expecting any repairs to be covered by his Go Program warranty, but Conway refused to repair or replace the motor and denied that Plaintiff had a warranty covering it. (Id. at 97:19-98:5.)

Plaintiff then had the truck towed back to Bergey's, although they, too, denied that Plaintiff had a warranty that would cover engine repairs. (Id. at 98:6-101:17.) Bergey's determined that the engine problems were caused by a failure of the timing gear. (See Ex. F to McKeon Cert., Bergey's Invoice dated July 14, 2014.) Bergey's did not put in the timing gear as part of its 2013 repairs to Plaintiff's engine, so it was not covered by the parts warranty from that repair. (Forde Dep. at 45:14-22.) It is undisputed that the Go Program warranty does not cover repairs to the timing gear set because the timing gear is specifically excepted as one of a few "not covered" parts. (Ex. G to McKeon Cert. at 4; see also Bird Dep. at 15:16-25; Forde Dep. at 15:20-16:23, 45:23-46:2; Marcantonio Dep. at

6

130:17-131:18, 149:12-25.) Nonetheless, Plaintiff has refused to pay for the engine repair he believes is covered by his extended warranty. At this time, Plaintiff's truck still remains at Bergey's and has not been repaired because of this dispute. (Complaint at ¶ 21.)

Plaintiff filed this suit on August 18, 2015, bringing claims against Bergey's, Conway,[2] and Volvo of North America, Inc. for breach of express warranty, breach of contract, and breach of the implied warranty of merchantability, N.J.S.A. 12A:2-314, and alleging violations of New Jersey's Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-68 et seq. and the Magnuson-Moss Warranty Improvement Act, 15 U.S.C. § 2301 et seq. arising from Defendants' refusal to consider the most recent engine repairs covered under a Go Program extended warranty. After exchanging discovery, Defendants Bergey's and Volvo of North America filed this motion for summary judgment. [Docket Item 27.] The motion is now fully briefed, and the Court will decide it without holding oral argument pursuant to Fed. R. Civ. P. 78.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such

---

[2] Conway was terminated as a party on January 6, 2016. [Docket Item 21.]

7

that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. <u>Id.</u> Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. <u>Gonzalez v. Sec'y of Dept. of Homeland Sec.</u>, 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable inferences. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007); <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 287 (3d Cir. 2014). However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" <u>Halsey</u>, 750 F.3d at 287 (quoting <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382 n. 12 (3d Cir. 1990); citing <u>Anderson</u>, 477 U.S. at 255).

## IV. DISCUSSION

Defendants contend that they are entitled to summary judgment Plaintiff's claims stemming from the 2014 repairs because Plaintiff does not have a Go Program extended warranty on his truck engine, and that even if he did, it would not cover the particular parts needed to repair his engine. Plaintiff takes the position that factual disputes on both questions preclude the entry of summary judgment. For the reasons that follow, the Court will grant Defendants' motion.

The essence of Plaintiff's allegations is that Bergey's sold him a Go Program extended warranty for his truck engine in 2013 but then failed to honor it when his engine needed repair in 2014. Whether or not an enforceable agreement exists between Plaintiff and Defendants for an extended engine warranty on Plaintiff's truck, Plaintiff can only succeed on his breach of express warranty, breach of contract, breach of the implied warranty of merchantability, NJCFA, and Magnuson-Moss claims if Bergey's and Volvo refused to cover repairs in 2014 that should have been covered under the Go Program extended warranty that Plaintiff contends he holds.[3]

---

[3] Accordingly, the Court expresses no opinion as to whether Plaintiff has adduced sufficient evidence to allow a jury to find that a contract for a Go Program warranty existed between him and Bergey's. Instead, the Court will assume, for purposes of this motion, that Plaintiff had a Go Program warranty in effect at the time of the 2014 repairs.

9

Here, the undisputed evidence in the record shows that Plaintiff's engine failed because of the timing gear, a part which all parties agree is expressly excluded from coverage under a Go Program warranty. (See Forde Dep. at 15:20-16:23, 45:23-46:2; Marcantonio Dep. at 130:17-131:18, 149:12-25; Bird Dep. at 15:16-25; Ex. G to McKeon Cert. at 4.) Plaintiff contends that "the timing gear was not the only issue" and that "there were multiple issues such as a chipped gear" that could have caused the engine's damage. (Plaintiff's Brief in Opposition [Docket Item 30] at 6; see also Marcantonio Dep. at 148:17-149:3.) But Plaintiff has not adduced sufficient evidence to create a genuine dispute of fact on this question; he speculates that Conway damaged gears in his engine when they made other repairs, an assertion that is supported only by his own self-serving testimony. "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010); Sterling Nat'l Mortg. Co. v. Mortg. Corner, Inc., 97 F.3d 39, 44 (3d Cir. 1996) (stating that "[m]ere speculation about the possibility of the existence of such facts" does not raise triable issue to defeat motion for summary judgment).

Moreover, even if Plaintiff is correct that his engine suffered additional damage that would be covered under a Go

Program warranty, that fact alone would not make Defendants liable for failing to cover repairs to a timing gear that is specifically excluded from the warranty under any theory of liability in the Complaint.

Count I alleges a violation of the NJCFA. Under the NJCFA, "a plaintiff must allege three elements: (1) unlawful conduct; (2) ascertainable loss; and (3) a causal connection between the defendants' unlawful conduct and the plaintiffs' ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1086 (N.J. 2007). Actionable unlawful conduct under the NJCFA includes "any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. 56:8-2.[4]

---

[4] Plaintiff specifically alleges that Bergey's conduct is a violation of the used motor vehicle provision of the NJCFA, N.J.S.A. 56:8-68. That statute makes it unlawful for a dealer, inter alia, to "misrepresent the mechanical condition of a used motor vehicle," to "represent that a used motor vehicle, or any component thereof, is free from material defects in mechanical condition," or to "misrepresent the terms of any written warranty, service contract or repair insurance currently in effect on a used motor vehicle" before or at the time of sale of the vehicle. N.J.S.A. 56:8-68(a), (b) & (e). A "warranty" within the meaning of the used motor vehicle provision is "any undertaking, in writing and in connection with the sale by a dealer of a used motor vehicle, to refund, repair, replace, maintain or take other action with respect to the used motor vehicle . . . ." N.J.S.A. 56:8-67 (emphasis added). Plaintiff has not shown how or why such statute is applicable to Bergey's,

Bergey's representations to Plaintiff that the timing gear is not covered by the Go Program warranty is not actionable unlawful conduct where it is true; Plaintiff does not allege, nor is there any evidence in the record to suggest, that Bergey's representatives gave Plaintiff inconsistent advice about whether or not his 2014 engine repairs would be covered by an extended warranty before he towed his truck there. To the extent that Plaintiff seeks to prove that Bergey's failure, or refusal, to sell him a Go Program warranty as part of his $11,500 repairs in 2013 is a violation of the NJCFA, Plaintiff's claim must fail for lack of ascertainable loss; he has not shown that he has suffered any monetary losses by not receiving the "benefit of his bargain," by, for example, paying out-of-pocket for repairs that should have been covered by the warranty he believes he holds. For these same reasons, Plaintiff's breach of

---

when in fact he purchased the truck years before from a different dealer in another state, and where there is no evidence in the record to show that Bergey's ever installed or repaired the timing gear that failed. Accordingly, the Court will address Plaintiff's NJCFA claim under the general provision addressing fraud in connection with the sale of goods.

express warranty[5] (Count IV) and breach of contract[6] (Count V) claims must fail as well; Defendants could not have breached the Go Program warranty by refusing to repair the timing gears where they are not responsible for that part under the terms of the warranty itself.

As for Plaintiff's claims alleging a breach of the implied warranty of merchantability (Count II) and the Magnuson-Moss Act (Count III), Defendants are likewise entitled to summary judgment on the record before the Court because Bergey's effectively disclaimed implied warranties on its invoices for work performed on Plaintiff's truck. To properly disclaim the implied warranty of merchantability, the language of the disclaimer must be clear and conspicuous such that a reasonable purchaser would notice it. Gladden v. Cadillac Motor Car Div., 416 A.2d 394, 400 (N.J. 1908). Put another way, to disclaim the

---

[5] Under New Jersey law, to prevail on a claim for breach of express warranty, a plaintiff must show: "(1) that [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, product or description." Peruto v. TimberTech Ltd., 126 F. Supp. 3d 447, 453 (D.N.J. 2015) (citing Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007) and Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 324 (D.N.J. 2014)).

[6] To make out a claim for breach of contract under New Jersey law, a plaintiff must allege that (1) there is a contract between the parties; (2) the contract was breached; (3) the breach caused damages; and (4) the party stating the claim performed its own contractual obligations. Frederico, 507 F.3d at 203.

implied warranty of merchantability, the language must specifically mention "merchantability." N.J.S.A. 12A:2-316(2).

Here, the bottom of every page of Bergey's invoices includes the following disclaimer, in a separate box and featured in a different font from the rest of the page:

> The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The seller hereby disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any person to assume for it any liability in connection with the sale of this item/items.

(See McKeon Cert. Ex. D & F.) There is no question that this disclaimer is sufficiently conspicuous and properly-worded to exclude the implied warranty of merchantability as required by New Jersey law. Because Plaintiff's claim under the Magnuson-Moss Act appears to be based upon his state law breach of express and implied warranties, and because he cannot prove either of those underlying state law claims, summary judgment is necessarily appropriate on Count III. See Cooper v. Samsung Elec. Amer., Inc., 374 Fed. Appx. 250, 254 (3d Cir. 2010) ("In the instant case, [plaintiff's] Magnuson-Moss claim is based upon his state law claims of breach of express and implied warranties. Since the District Court correctly dismissed both of those claims, [plaintiff's] Magnuson-Moss claim was also properly dismissed."); In re Ford Motor Co. Ignition Switch

Prods. Liab. Litig., 19 F. Supp. 2d 263, 267 (D.N.J. 1998) (noting that claims brought under the Magnuson-Moss Act would be dismissed with prejudice "because the underlying express and implied warranty claims . . . had been dismissed with prejudice."); Oliver v. Funai Corp., Inc., Civil No. 14-4532, 2015 WL 3938633, at *9 (D.N.J. June 25, 2015) (holding that "Magnuson-Moss claims based on breaches of express (and implied) warranties under state law depend upon those state law claims.");.

Plaintiff's opposition includes a stray request for leave "to provide an expert" to prove that the timing gear is not the only reason his engine failed. (Pl. Opp. Br. at 6.) To the extent this sentence constitutes a motion to reopen discovery nearly a year after fact and expert discovery was to have concluded, the Court will deny Plaintiff's request. The record indicates that the parties had ample time and opportunity to conduct discovery, and he has provided no explanation as to why he could not previously submit expert testimony within the time provided by the parties' joint discovery plan and the Court's Scheduling Orders. [See Docket Items 12 & 14.]

## V. CONCLUSION

Defendants' motion for summary judgment will be granted in its entirety. An accompanying Order will be entered.

**May 12, 2017**                         **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                          Chief U.S. District Judge